UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIONTAE JOHAN DUNCAN,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA HEALTHCARE RECEIVERSHIP CORP., et al.,<br><br>Defendants. | Case No. 1:20-cv-01288-ADA-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FROM PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(Doc. 52)<br><br>**14-DAY OBJECTION PERIOD** |

**I.     RELEVANT PROCEDURAL BACKGROUND**

Plaintiff initiated this action with the filing of his original complaint on September 10, 2020. (Doc. 1.)

In its First Screening Order issued June 14, 2021, the Court found Plaintiff's complaint violated Rule 8 of the Federal Rules of Civil Procedure because it was "replete with arguments, conclusory statements, vague assertions, and unnecessary background." (*See* Doc. 27 at 3.) Plaintiff was afforded the opportunity to file a first amended complaint curing the deficiencies identified; he was to do so within 21 days. (*Id*. at 7.)

On July 20, 2021, the undersigned issued an Order to Show Cause (OSC) why the action should not be dismissed for Plaintiff's failure to obey a court order. (Doc. 34.) Plaintiff responded on July 30, 2021, indicating his "alarming shock and total fear" upon receipt of the OSC, and

1  contending he did not receive the Court's screening order. (Doc. 35.) On August 2, 2021, the
2  OSC was discharged, and Plaintiff was granted an extension of time to file a first amended
3  complaint; Plaintiff was also re-served with the screening order. (Doc. 36.)
4        On August 23, 2021, Plaintiff filed a first amended complaint. (Doc. 41.) Under the
5  heading "IV. Causes of Action," Plaintiff attempted to incorporate his original complaint. (*Id*. at
6  5, 10.)
7        On March 15, 2022, the undersigned issued an Order Granting Plaintiff Leave to File a
8  Second Amended Complaint, finding Plaintiff's first amended complaint did not comply with the
9  Court's previous screening order because it was not an amended complaint complete in and of
10 itself. (Doc. 46.) Plaintiff was afforded 30 days within which to file a second amended complaint.
11 (*Id*. at 4.)  On May 4, 2022, Plaintiff filed his second amended complaint. (Doc. 52.)
12       On July 25, 2022, Plaintiff filed a document titled "… Leave Request To Reponsed an
13 Amended Chance Complaint [if] Difficult Vision to Already One Filed [Amended #2] before
14 dismissal even Consider Chance by …." (Doc. 63 [punctuation marks & brackets in original].)
15       On November 22, 2022, Plaintiff filed a document titled "<u>Motion</u>: Change of address. And
16 Requestin[g] T.R.O for New arisen Injury, Request to Amend Complaint Add New defendants at
17 a Later Date. Request Motion this of Court …." (Doc. 67 [punctuation in original].)
18       On November 30, 2022, the Court issued its Order Regarding Plaintiff's July 25, 2022 and
19 November 22, 2022 Filings. (Doc. 69.) The Court denied Plaintiff's July 25, 2022 filing as moot,
20 finding the filing "cannot be construed as a motion for leave to file a third amended complaint,"
21 because it did "not seek to make any changes to the claims asserted in Plaintiff's second amended
22 complaint, nor does it reference any additional defendants, or even specific transactions or
23 occurrences. Rather, Plaintiff's filing is interpreted to be an explanation regarding his previous
24 attempts to file an amended complaint." (*Id*. at 4.) The Court also denied Plaintiff's November 22,
25 2022 filing, finding it sought "leave to amend … to add both new claims and new defendants" in
26 violation of Rule 20 of the Federal Rules of Civil Procedure. (*Id*. at 4-6.)
27 **II.     SCREENING REQUIREMENT**
28       The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III. PLEADING REQUIREMENTS

#### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

3

marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord

*Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV. SCREENING DISCUSSION

### A. Plaintiff's Second Amended Complaint

Plaintiff's seconded amended complaint Plaintiff names the California Healthcare Receivership Corp., as well as Warden P. Phiffer, Psychologist G. Graywall, Psychologist Rubbish, EOP Supervisor/LCSW T. Taylor,[1] Senior Crisis Psychologist W. Gerderal III, LCSW J. Marciel, Psychologist Jane Doe #1 and Psychologist Jane Doe #2, all employed at Kern Valley State Prison, as defendants. (Doc. 52 at 1-4.)

In his first claim for relief, titled "Freedom from Cruel and Unusual punishment by Mental Health Care providers within CDCR at Kern Valley State Prison," Plaintiff alleges that on

---

[1] Plaintiff's second amended complaint names "T. Taylor" in the caption. (Doc. 52 at 1.) Subsequently, under the heading "III. Defendants" in the complaint form, Plaintiff identifies "T. Taylor" as "employed as E.O.P. Supervisor." (*Id*. at 3.) Later, Plaintiff provides an additional handwritten page with a heading titled "III. Defendan[t]s continued" wherein he states "Taylor, is employed as Licensed Clinical Social Worker at KVSP." (*Id*. at 4.) Nevertheless, it is clear from the factual content of the claims asserted there is but one Defendant Taylor.

5

March 17, 2017, he was "dropped from E.O.P level of care to a ["lowest"] level" of mental health care despite admission to an acute mental hospital "3 months before." (Doc. 52 at 3.) Plaintiff contends he decompensated on April 1, 2022 in "this lowest level of care [CCCMS]." (*Id*.) Plaintiff also contends he has been physically assaulted and sexually battered, "housed in punitive segregation on false documentation because of all defendants," and has endured physical, mental and spiritual suffering as a result. (*Id*. at 3, 5.) Plaintiff asserts the injuries started when Defendants Marciel and Graywall "dropped" him to the lowest level of care. (*Id*. at 5.) He contends Marciel continued "this level by false reports of real mental health stability." (*Id*.) Plaintiff further alleges that Jane Doe #1 and Jane Doe #2 "did the same." (*Id*.) Defendant Taylor "ignored a suicide cry for help," after Plaintiff "acted on his poor impulse" and swallowed 200 pills "and scared his heart to a 1st degree opt condition." (*Id.*) Defendant Gerderal ignored "an extensive evaluation in this incident and with rest of defendants falsified documents and lied about plaintiff's stability to cover up plaintiff's decompensating spiral towards death" between March 17, 2017 until April 1, 2022. (*Id*.)

In his second claim for relief, titled "Due process 14th Amendment violation," Plaintiff states that "around July 2017," Defendant Marciel "lied and falsified 115-MH-RVR evaluation document," resulting in Plaintiff's six-month punitive segregation due to Marciel's lies. (Doc. 52 at 5.) Plaintiff contends the appeals coordinator "agreed and granted that he did was deliberately indifferent." (*Id*.) Plaintiff asserts the appeals coordinator "only took J. Marciel off [his] case load but never re-evaluated the behavior by a new reviewer." (*Id*.) Although not entirely clear, Plaintiff appears to assert that by failing to perform a reevaluation, the document causing Plaintiff's six-month punitive segregation remained on file. (*Id*. at 5-6.) Plaintiff alleges he was "finally raised up to a progressive level of care. Back E.O.P." (*Id*. at 6.) Plaintiff contends "these defendants falsified and deliberately lied about" his stability "where he was deliberately housed around higher function inmate." (*Id*.)  Plaintiff contends the falsified reports by Marciel caused his six-month punitive segregation and that he was "assaulted by inmates, physically beat up, sexually battered under" Defendant Rubbish's "watch." (*Id*.) Defendant Taylor denied "a sign cry for help" when Plaintiff attempted suicide by swallowing 200 pills "on Taylor's watch." (*Id*.)

6

Plaintiff contends Gerderal was lied to by Jane Doe #1 and Jane Doe #2 "about stability after suicide attempt where plaintiff killed his 1st degree heart" and under the "deliberate miss eval." followed by Gerderal and lies, Plaintiff was denied an evaluation for higher care around March 17, 2018. (*Id*.) Plaintiff contends Defendant Phiffer was "warden at KVSP [where] these staff worked." (*Id*.) Plaintiff contends that collectively the named Defendants "conspired lies and covered up records to downplay physical assaults, sexual batteries, and mental emotional pain and suffering from" March 2017 when Taylor and Graybill's action "illegally" caused Plaintiff's "drop" to the lowest form of mental health care. (*Id*. at 6-7.) Plaintiff asserts the aftereffects "were the injuries described herein" and are incalculable "by the deliberated conspired scheme to be blind even as made put on notice." (*Id*. at 7.) Plaintiff states that "again and again" he suffered injuries "at different approx. time" between March 17, 2017 and April 1, 2022. (*Id*.) Plaintiff claims "these defendants orchestrated" a way to admit his injuries and assign him to a "higher more safer level of appropriate care by fei[g]ning" humanity. (*Id*.) Plaintiff contends he is back in E.O.P. "for same reasons that got him dropped to injuries 5 years before" and "many injuries" were amassed during that period, "on top of COVID-19 suffered 4 times." (*Id*.)

Plaintiff seeks declaratory relief "for defendants to explain and correct reasons of treatment," injunctive relief in the form of being kept "at a higher level of care," punitive damages of $200,000 and compensatory damages of $800,000, "individually and officially to all defendants." (Doc. 52 at 8.)

### B. Analysis

#### 1. *Deliberate Indifference to Serious Medical Needs*

The Court construes Claim I of the second amended complaint to assert Eighth Amendment violations by all named Defendants for their alleged deliberate indifference to Plaintiff's serious medical needs.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.*

*Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

1     Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060
2  (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from
3  which the inference could be drawn that a substantial risk of serious harm exists,' but that person
4  'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official
5  should have been aware of the risk, but was not, then the official has not violated the Eighth
6  Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*,
7  290 F.3d 1175, 1188 (9th Cir. 2002)).
8     To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted
9  from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096;
10 *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference
11 based on delay in treatment must show delay led to further injury).
12    Here, liberally construing the second amended complaint, Plaintiff has met the first,
13 objective prong of the deliberate indifference test. Plaintiff contends he has significant mental
14 health concerns, including a suicide attempt, that a reasonable doctor would find important and
15 worthy of treatment. *Colwell*, 763 F.3d at 1066.
16    As to the second, subjective prong of the deliberate indifference test, Plaintiff's second
17 amended complaint plausibly alleges that Defendants Marciel, Graywall, Taylor, Gerderal and
18 Jane Does #1 and #2 knew Plaintiff faced a substantial risk of serious harm because Plaintiff had
19 recently been admitted to an acute mental hospital, and these Defendants disregarded that risk of
20 serious harm by failing to take reasonable measures to abate the risk in the form of ensuring
21 Plaintiff's E.O.P. placement, particularly where Plaintiff had attempted suicide by swallowing
22 200 pills. *Farmer*, 511 U.S. at 835, 837. Plaintiff has not stated a plausible deliberate indifference
23 to serious medical needs claim against any other named Defendant because the second amended
24 complaint, in Claim I, makes no reference whatsoever to Defendants Rubbish and Phiffer. Thus,
25 Plaintiff has failed to link any action or inaction by Rubbish or Phiffer to his claim. *Rizzo*, 423
26 U.S. at 373-75.
27    In sum, Plaintiff has stated plausible Eighth Amendment deliberate indifference to serious
28 medical needs claims against Defendants Marciel, Graywall, Taylor, Gerderal and Jane Does #1

and #2.

### 2. *Due Process*

Plaintiff's Claim II is titled "Due process 14th Amendment Violation." (Doc. 52 at 5.) Plaintiff appears to contend his due process rights were violated by all named Defendants when he was removed from EOP. (*Id.*)

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-27 (1976); *Smith v. Sumner*, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question "... is within the normal limits or range of custody which the conviction has authorized the State to impose." *Wolff*, 418 U.S. at 557-58; *Smith*, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, *see Wolff*, 418 U.S. at 557; in remaining in the general population, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995); in not losing privileges, *see Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976); in staying at a particular institution, *see Meachum*, 427 U.S. at 225-27; or in remaining in a prison in a particular state, *see Olim v. Wakinekona*, 461 U.S. 238, 245-47 (1983). *See also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff had no protected liberty interest in being free from confinement in the SHU); *Robinson v. Knowles*, No. DIV S-08-0629-MCE-CMK-P, 2008 WL 1141615, at *2 (E.D. Cal. Apr. 7, 2008) ("it does not appear that plaintiff can state a cognizable due process claim based on placement in 'E.O.P.'"). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005).

Additionally, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Marciel, Graywall, Taylor, Gerderal and Jane Does #1 and #2 provide the explicit textual source for his claims against those Defendants, and Plaintiff alleges no specific facts demonstrating a separate due process claim.

In light of the foregoing, since Plaintiff has no liberty interest in remaining in EOP, Plaintiff cannot state a cognizable due process claim. Further, his Eighth Amendment deliberate indifference to serious medical needs claims provide the explicit textual source of his constitutional protection and guide the analysis of his claims.

### 3. Retaliation

In an abundance of caution, the Court also construes Claim II of the second amended complaint to assert First Amendment violations by all named Defendants for retaliation. A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim*, 584 F.3d at 1269, 1271. Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*,

647 F.3d at 882. To the extent Plaintiff's claim alleges retaliation against the named Defendants for Plaintiff's removal from EOP, Plaintiff has not stated cognizable retaliation claims against any named Defendant.

EOP refers to Enhanced Outpatient Program and has been described as follows:

> Inmates who receive enhanced outpatient program care are designated EOP by CDCR Mental Health Services because they are receiving mental health care services. EOP is characterized by a separate housing unit and structured activities for mentally ill inmate-patients who, because of their illness, experience adjustment difficulties in a General Population ("GP") setting, yet are not so impaired as to require 24–hour inpatient care. One of the critical components of the program is the designated housing unit with restricted access and alternative educational, work, and recreational opportunities specifically provided for inmate-patients whose mental illness precludes their placement and participation in the GP programs. One of the specific objectives of EOP is to provide treatment that focuses on achieving behavioral control and the development of socially acceptable behavior within the institution. Specific EOP treatment criteria require those receiving services to experience: (1) acute onset of or significant decompensation of a serious mental disorder characterized by symptoms such as delusional thinking, marked changes in affect, and vegetative signs with definitive impairment of reality testing and/or judgment; (2) an inability to function in the GP; and (3) usually, a Global Assessment Functioning score of less than fifty.

*Martinez v. Tilton*, No. 1:10-cv-01501-SKO (PC), 2015 WL 119739, at *7 (E.D. Cal. Mar. 16, 2015).[2]

While inmates do not have the constitutional right to be housed at a particular prison or within a particular unit at a prison, the lack of a separate constitutionally protected interest in a particular housing assignment does not defeat a retaliation claim. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim*, 584 F.3d at 1269); *Austin v. Terhune*, 367 F.3d 1167, 1170-71 (9th Cir. 2004); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "The adverse action need not be an independent constitutional violation." *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 806).

---

[2] "There are a number of reasons why EOP inmates are segregated from the rest of the prison population: (1) they require and/or receive additional mental health services in a group setting, or (2) they could be victimized by other inmates. In other words, EOP inmates are segregated so as to provide increased clinical and custodial support and limit contact with members of the institution's GP inmate population. Under normal circumstances, non-EOP inmates are not housed with EOP inmates." *Martinez*, 2015 WL 1198739, at *8.

Liberally construing Plaintiff's second amended complaint, the Court finds Plaintiff has failed to plausibly alleged retaliation claims against any named Defendant. Specifically, the Court finds that Plaintiff has failed to allege the existence of a retaliatory motive—a requirement of a retaliation claim—on the part of any named Defendant. *McCollum*, 647 F.3d at 882-83; *Pratt*, 65 F.3d at 808. Plaintiff has alleged no facts setting forth any action on behalf of any individual that could be liberally construed to allege retaliatory motive. Plaintiff's allegations instead assert that Defendants Marciel, Graywall, and Jane Does #1 and #2 lied and falsified documents or records, but no facts explain why any individual would have done so.

Moreover, Plaintiff's factual allegations regarding Defendants Rubbish, Gerderal and Taylor are also lacking any support for a finding of retaliatory motive. As to Rubbish, Plaintiff merely asserts the events of which Plaintiff complains happened under Rubbish's "watch." Plaintiff's assertion as to Defendant Rubbish improperly seeks to establish liability based upon a respondeat superior theory, *Iqbal*, 556 U.S. at 676-77, and Plaintiff has not demonstrated an official policy or custom by Rubbish. *Waggy*, 594 F.3d at 713. His allegation regarding Rubbish's involvement is conclusory and therefore insufficient. *Ivey*, 673 F.2d at 268. As to Gerderal, Plaintiff's assertion is simply that Gerderal was lied to by Jane Does #1 and #2, and there are no facts explaining Gerderal's retaliatory motive. As to Taylor, Plaintiff alleges Taylor "ignored cry for help," referring to his suicide attempt, but that assertion does not explain what retaliatory motive Taylor may have had for doing so.

In sum, Plaintiff has failed to state any cognizable First Amendment retaliation claim against any named Defendant.

### 4. No Other Claims Asserted

To the extent Plaintiff seeks to allege a conspiracy claim involving any or all named Defendants, he has failed to do so.

A claim brought for violation of section 1985(3) requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property

1    or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*,
2    978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-
3    based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim.
4    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (quotations & citation
5    omitted). A claim for violation of section 1985(3) requires the existence of a conspiracy and an
6    act in furtherance of the conspiracy. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005)
7    (citation omitted). A mere allegation of conspiracy is insufficient to state a claim. *Id*. at 676-77.

8    Even liberally construing Plaintiff's second amended complaint, he fails to state a
9    cognizable conspiracy claim. While Plaintiff alleges a conspiracy, his allegations are merely
10   conclusory and fall far short of establishing the required four elements listed above. Conclusory
11   allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678; *Holgate*, 425 F.3d at 676.

### 5. *California Health Care Receivership Corporation*

Plaintiff names "The California Healthcare Receivership Corp." as a named Defendant in his second amended complaint. The proper name of the entity to which Plaintiff's refers is the California Prison Health Care Receivership Corporation.

A governmental agency that is an arm of the state is not a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (explaining agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court), cert. denied, 138 S. Ct. 459 (2017); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc); cf. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991) (explaining that agencies that are arms of the state are entitled to the same immunity from suit as the state because "'the state is the real, substantial party in interest'" (citation omitted)).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation & citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court...." *Dittman*, 191 F.3d at 1025-26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)).

The Court finds the California Prison Health Care Receivership Corporation is an agency or arm of the State of California. Therefore, Plaintiff's suit seeking damages and injunctive relief against the California Prison Health Care Receivership Corporation is barred by the Eleventh Amendment.

### *6. Further Amendment Would Be Futile*

Plaintiff has been afforded opportunities to amend his complaint, (s*ee* Docs. 27, 36 & 46), and his second amended complaint represents the third effort to state cognizable claims.  If a court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). "A district court may deny leave to amend when amendment would be futile." *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013).

Here, Plaintiff cannot state cognizable due process claims against any named Defendant. Plaintiff has also been unable to successfully link any action or inaction by named Defendants Rubbish or Phiffer to any either his deliberate indifference to serious medical needs claims or his retaliation claims. Lastly, Plaintiff cannot bring suit against the California Prison Health Care Receivership Corporation. Thus, the Court finds that granting Plaintiff further leave to amend his complaint would be futile. *Hartmann*, 707 F.3d at 1130; *Lopez*, 203 F.3d at 1129.

**V.     FINDINGS AND RECOMMENDATIONS**

For the reasons set forth above, the Court **RECOMMENDS** that:

1. Plaintiff's second amended complaint proceed *only* on Plaintiff's Eighth Amendment

deliberate indifference to serious medical needs claims (Claim I) against Defendants Marciel, Graywall, Taylor, Gerderal and Jane Does #1 and #2;

2. The remaining claims in Plaintiff's second amended complaint (Claim II) against all named Defendants be DISMISSED; and

3. Defendants California Healthcare Receivership Corp., Warden P. Phiffer and Psychologist Rubbish be DISMISSED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). Within 14 days of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 12, 2023**              /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE