UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIONTAE JOHAN DUNCAN,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA HEALTHCARE RECEIVERSHIP CORP., et al.,<br><br>　　　　　　Defendants. | Case No.: 1:20-cv-01288-KES-SKO<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN DEFENDANT AFTER SCREENING OF PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>(Doc. 124)<br><br>**14-DAY OBJECTION PERIOD** |

　　　　Plaintiff Diontae Johan Duncan is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.　　BACKGROUND**

　　　　On June 1, 2023, then assigned District Judge Ana de Alba issued an Order Adopting Findings and Recommendations to Dismiss Certain Claims and Defendants from Plaintiff's Second Amended Complaint. (Doc. 80.) The action was ordered to "proceed *only* on the Eighth Amendment deliberate indifference to serious medical needs claims pursuant to 42 U.S.C. § 1983 against Defendants Marciel, Graywall, Taylor, Gerderal, and Jane Does #1 and #2 (Claim I) in Plaintiff's second amended complaint," the remaining claims were dismissed, and Defendants California Healthcare Receivership Corp., Warden C. Phifer, and Psychologist Rubish were dismissed. (*Id*. at 3.)

Following service of process, on November 15, 2023, Defendant Taylor filed a motion to dismiss the claim against him in Plaintiff's second amended complaint. (Doc. 101.) On November 28, 2023, the Court issued its Order Granting Stay of Responsive Pleading Deadline as to Defendants Marciel, Gallienne III[1] and Grewal.[2] (Doc. 106.) The Court stated it would "reset the responsive pleading deadline following resolution of Defendant Taylor's motion to dismiss." (*Id*. at 4.)

On August 9, 2024, the undersigned issued Findings and Recommendations to Grant Defendant Taylor's Motion to Dismiss. (Doc. 118.) On October 15, 2024, District Judge Kirk E. Sherriff issued an Order Denying Plaintiff's Motion for Reconsideration regarding Plaintiff's argument that his second amended complaint identified two defendants bearing the surname Taylor—finding Plaintiff's second amended complaint "referenced a single 'Taylor' defendant."[3] (Doc. 122.) That same date, Judge Sherriff issued an Order Adopting in Part the Findings and Recommendations that (1) granted Taylor's motion and "dismissed Plaintiff's claims against defendant Taylor contained within the second amended complaint" with leave to amend; (2) deemed the amended complaint lodged September 27, 2024, to be the third amended complaint; and (3) lifted the stay of the responsive pleading deadline, holding that "defendants Marciel, Gallienne III, and Grewal shall not be required to file a responsive pleading under after the magistrate judge has screened plaintiff's third amended complaint." ((Doc. 123 at 2-3.) The Clerk of the Court docketed and filed the previously lodged amended complaint as Plaintiff's Third Amended Complaint. (Doc. 124.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

---

[1] This individual was identified as W. Gerderal III in Plaintiff's second amended complaint.

[2] This individual was identified as G. Graywall in Plaintiff's the second amended complaint.

[3] The case proceeds only on Plaintiff's claims against a single Taylor defendant.

2

fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III. PLEADING REQUIREMENTS

#### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

1  liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

## B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

## C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

4

1    Supervisory liability may also exist without any personal participation if the official
2 implemented "a policy so deficient that the policy itself is a repudiation of the constitutional
3 rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942
4 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*
5 *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

6    To prove liability for an action or policy, the plaintiff "must ... demonstrate that his
7 deprivation resulted from an official policy or custom established by a ... policymaker possessed
8 with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d
9 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between
10 such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*
11 *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the
12 involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*
13 *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

14    **IV.    DISCUSSION**

15        **A. Plaintiff's Third Amended Complaint**

16    As an initial matter, the Court notes that Plaintiff's third amended complaint names, in
17 part, the "California Healthcare Receivership Corp." and "Dr. T. Taylor … E.O.P. Supervisor:
18 [Psychologist]" as defendants. (*See* Doc. 124 at 3-4). Since the California Healthcare
19 Receivership Corp. was dismissed from this action on June 1, 2023, (*see* Doc. 80 at 2), Plaintiff
20 may not bring claims against that entity.

21    Next, the third amended complaint was lodged on September 27, 2024, *prior to* Judge
22 Sherriff's orders of October 15, 2024, and improperly names "T. Taylor … E.O.P. Supervisor."
23 Judge Sherriff denied Plaintiff's motion for reconsideration on October 15, 2024 (*see* Doc. 122),
24 reaffirming an earlier order that this action may proceed, in relevant part, against a single Taylor
25 defendant. Therefore, this screening order will not address any claims concerning the California
26 Healthcare Receivership Corp. or "T. Taylor … E.O.P. Supervisor." The remaining defendants
27 named in Plaintiff's third amended complaint for purposes of this screening, employed at Kern
28 Valley State Prison (KVSP), are G. Grewal, E.O.P. Psychologist; J. Marciel, Licensed Clinical

Social Worker; Tristen Taylor, Licensed Clinical Social Worker; W. Gallienne III, Senior Psychiatric Specialist, and Jane Doe, Mental Health Crisis Bed Clinician. (*See* Doc. 124 at 4-5.) Plaintiff seeks declaratory relief, "compensatory damages of $800,000.00 and punitive damages of $200,000.00, individually and officially capacity, [and] nominal damages of $1 dollar."[4] (*Id.* at 15.) Plaintiff demands a jury trial and states he "has nothing against a settlement dispute resolution …." (*Id.*)

### B. Official and Individual Capacities

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits for money damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Nor does it bar suits against state officials in their official capacity for prospective (injunctive) relief. *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010). Therefore, the Court finds that Plaintiff fails to state a claim for damages against Defendants Grewal, Marciel, Taylor, Gallienne III, and Jane Doe *in their official capacities*. Plaintiff is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants Grewal, Marciel, Taylor, Gallienne III, or Jane Doe, in their official capacities, or from seeking money damages from Defendants in their individual capacities.

### C. Plaintiff's Factual Allegations[5]

Plaintiff states he has "been in the mental health delivery system since December 2006. Services at mental health crisis bed. Clinical correctional case management system. Enhanced out patient program. And (4) Department of State Hospital admits." (Doc. 124 at 7.) Plaintiff alleges that around October 2016, he was placed on suicide watch following an "overdose attempt at

---

[4] "Nominal damages, as the term implies, are in name only and customarily are defined as a mere token or 'trifling.'" *Cummings v. Connell*, 402 F.3d 936, 943 (9th Cir. 2005).

[5] The Court has not summarized factual allegations specific to either T. Taylor, the EOP psychologist supervisor or the California Healthcare Receivership Corp., as neither the individual nor the entity are defendants in this action.

6

[KVSP] mental health crisis bed." (Doc. 124 at 7.) After approximately 30 days of observation, Plaintiff was transferred to "acute mental hospital at California Medical Facility [Vacaville] Department of State Hospital" for a three-month period. (*Id*.) Upon his return to KVSP on or about November 17, 2016, Plaintiff was assigned a case worker in the enhanced outpatient program (EOP), Defendant Grewal. (*Id*.) Between November 17, 2016, and March 17, 2017, Plaintiff suffered from hallucinations, depression, anxiety-manic depressive type, borderline personality disorder, antisocial personality disorder, and schizophrenia. (*Id*.) He contends he "was ignored, [skipped], overlooked and never [provided EOP] group therapy, counseling or anything." (*Id.*) Plaintiff states he was "just left to float around in unit and yard." (*Id*. at 8.)

On March 17, 2017, Plaintiff was released from the EOP program at KVSP "by an [Intermediate] Disciplinary Treatment Team collaborative (IDTT) decision." (Doc. 124 at 8.) Plaintiff alleges Defendant Grewal recommended his release to a lower level of care called "Clinical Correctional Case Management System (CCCMS)." (*Id*.) During the IDTT meeting, Plaintiff alleges he was told that "if [he doesn't] together mentally [he] would be kicked out of" the EOP program, but he was "never provided adequate program and [he] was suffering illness." (*Id*.) Plaintiff asserts he had just returned from acute care at the state hospital three months earlier after a "lethal" overdose. (*Id*. at 8-9.) He was in "ICU with blood poisoning [infection] and stayed 2 days in outside hospital, Bakersfield [Adventist]." (*Id*. at 9.) He contends it is his understanding that upon return from a state hospital to an institution, an inmate must "be placed in" EOP for one year. (*Id*.) Despite numerous appeals, Plaintiff states he was mistakenly housed with "higher functioning inmates" because of the IDTT decision. (*Id*.)

Plaintiff alleges that on July 17, 2017, he attempted suicide by swallowing "150 pills" and was treated at an outside hospital overnight before being returned to KVSP. (Doc. 124 at 9-10.) Between June 27 and June 28, 2017, he received two rule violation reports (RVR) for "bizarre and unusual behavior." (*Id*. at 10.) Defendant Marciel "did the evaluation to [determine] if mental health factors played" a part, but determined "there were no [mental] health factors involved in the bizarre behavior" RVRs or in Plaintiff's overdose. (*Id*.) Plaintiff further alleges that Marciel "was found guilty of deliberate indifference by his supervisor" after an appeal submitted by

1   Plaintiff's friends and family was partially granted. (*Id*.) Plaintiff states that "the other parts of
2   returning back to [EOP]" and a reevaluation of the behavior documented in the RVRs were
3   denied. (*Id*.) Plaintiff contends that because of Marciel's deliberate indifference, he "spent 6
4   months in punitive C-status [segregation] gang unit absent of any mental health treatment,
5   nothing just left there …." (*Id*. at 11.)

6   Plaintiff alleges that on June 5, 2018, three months after his release from segregation, he
7   met with Defendant Tristen Taylor regarding his suicidal thoughts and feelings. (Doc. 124 at 11.)
8   Plaintiff advised Taylor of his history and particularly the more recent events, and informed
9   Taylor over "5 follow up days" that he was "struggling" after enduring segregation and stated he
10  had not taken medication for two months. (*Id*.) Plaintiff alleges Taylor told him on the last
11  encounter "'to fill out a [medical] slip if suicidal' but that's why [Plaintiff] was talking to him"
12  then – he was suicidal. (*Id*.) Plaintiff contends that 9 days later, he "lethally" overdosed on his
13  cellmate's seizure medication, "blowing heart out of rhythm and dead tissue in heart from
14  previous suicidal attempts entered blood stream." (*Id*. at 11-12.) Plaintiff was taken to Bakersfield
15  Adventist for "ICU blood poisoning again and to Mercy Medical Delano." (*Id*. at 12.) He states
16  that at the hospital in Delano he was told he was "going to die." (*Id*.)

17  On or about July 9 or July 10, 2018, Plaintiff was returned to KVSP. (Doc. 124 at 12.)
18  Plaintiff encountered Defendant Gallienne III who sent him back to the same housing unit where
19  he had "overdosed." (*Id*.) Plaintiff contends Gallienne documented an "overdose ([poisoning]) but
20  no [lethality and] rated it a #1 minor injuries (just scrapes and bruises)." (*Id*.) Plaintiff contends
21  Defendant Jane Doe was present during his encounter with Gallienne. (*Id*. at 12-13.) Plaintiff
22  alleges the outside hospitals' documentation is inconsistent with Gallienne's report and Gallienne
23  did not consider all the information he is required consider. (*Id*. at 13.) Plaintiff contends that
24  although his "mental health stability" was to be evaluated "extensively" and usually takes "10
25  days or more in the MHCB," Plaintiff was returned to the same housing unit "10 mins" after his
26  return to KVSP from a "2 day overnight stay in outside hospital." (*Id*.)

27  Plaintiff alleges Grewal, Marciel, Tristen Taylor, Gallienne, and Doe acted with deliberate
28  indifference considering the "medical records and appeals." (Doc. 124 at 13-14.) He states he

8

1  "entered San Quentin at 16 years old in 1999" and has been "permanently diagnosed" with
2  "schizophrenia and other psychotic features, borderline personality disorder, and antisocial
3  disorder … since first diagnosed in December 2006." (*Id*. at 14.)

### A. Plaintiff's Eighth Amendment Medical Claim

The Court construes Plaintiff's third amended complaint to assert Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Grewal, Marciel, Tristen Taylor, Gallienne, and Doe.

<u>The Applicable Legal Standards</u>

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and

worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

<u>Analysis</u>

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff meets the first prong of the deliberate indifference test. He contends he suffered from several mental health conditions that significantly affect his daily life. *Colwell*, 763 F.3d at 1066. Next,

10

the Court finds Plaintiff has plausibly alleged that Defendants Grewal, Marciel, Tristen Taylor, and Gallienne failed to respond to his possible medical need and that he suffered harm because of their indifference. *Wilhelm*, 680 F.3d at 1122. Specifically, Plaintiff alleges that Grewal failed to respond to his medical needs by ignoring him by refusing to provide therapy or treatment and recommending a lower level of care; Marciel failed to properly evaluate his mental health condition resulting in Plaintiff being segregated in a unit that did not allow for any mental health treatment for a period of six months; Tristen Taylor ignored Plaintiff's numerous complaints of feeling suicidal and refused to provide treatment; and Gallienne refused to assign Plaintiff to a unit that would afford him access to the mental health treatment he needed. Plaintiff has nonetheless failed to allege sufficient facts to assert a cognizable claim against Jane Doe.

Plaintiff simply alleges Doe was present when Plaintiff met with Defendant Gallienne. Those facts are insufficient to state an Eighth Amendment deliberate indifference claim. Other than Doe's mere presence during the appointment, Plaintiff asserts no facts from which it can be inferred that Doe was aware of the substantial risk of serious harm to Plaintiff or and that she drew such an inference. *Toguchi*, 391 F.3d at 1057. Plaintiff has been provided several opportunities to amend and will not be afforded a further opportunity to amend his complaint regarding any claim against Jane Doe. *See Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend).

## Conclusion

In sum, the undersigned finds that Plaintiff has stated plausible Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Grewal, Marciel, Tristen Taylor, and Gallienne, but has failed to state any cognizable claim against Defendant Jane Doe.

**V.     ORDERS, AND RECOMMENDATIONS**

Based on the foregoing, the Court **HEREBY ORDERS** the Clerk of the Court to modify the docket as follows:

1. Terminate "T. Taylor, Mental Health EOP Supervisor" from the docket considering

the Court's orders of June 1, 2023 (Doc. 80) and October 15, 2024 (Doc. 122),

2. Substitute the correct name of "G. Grewal" in place of "Dr. Graywall or Graywell or Grahule, Psychologist Care Provider,"

3. Add the first name "Tristen" to "Taylor, Licensed Clinical Social Worker,"

4. Terminate "Dr. W. Gerderal, IIII, CTC Senior Spec. Psychologist" because it is duplicative of "Dr. William Gallienne, III" reflecting that individual's proper surname, and

5. Terminate "Jane Doe 2" because Plaintiff named only one Jane Doe in his third amended complaint.

Further, for the reasons stated above, the Court **HEREBY RECOMMENDS** that:

1. This action PROCEED only on Plaintiff's Eighth Amendment deliberate indifference to serious medicals needs claims against Defendant Grewal, Marciel, Tristen Taylor, and Gallienne;

2. Defendant Jane Doe #1 be DISMISSED from the action; and

3. Defendants Grewal, Marciel, Tristen Taylor, and Gallienne be ordered to file an answer to Plaintiff's third amended complaint within 30 days of the district judge's adoption of these findings and recommendations, if deemed appropriate.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time

may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 30, 2025**                                /s/ *Sheila K. Oberto*                 
                                                    UNITED STATES MAGISTRATE JUDGE

13